## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR110 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| BRYAN A. GELB and | ) | RECOMMENDATION |
| PAUL W. GILMAN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motions to suppress filed by the defendants Bryan A. Gelb (Gelb) (Filing No. 33) and Paul W. Gilman (Gilman) (Filing No. 35 and Filing No. 37).[1] The defendants are charged in the Indictment with the possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (Count II) and conspiracy related thereto, in violation of 21 U.S.C. § 846 (Count I). **See** Filing No. 1. The defendants seek to suppress evidence derived from a traffic stop by the Douglas County Sheriff's Department (DCSD) of a vehicle driven by Gilman and occupied by Gelb, and a search of the vehicle and the defendants on March 12, 2008, in Omaha, Nebraska.

An evidentiary hearing was held on the motions on July 25, 2008. Gelb was present for the hearing along with his retained counsel, Deborah D. Cunningham. Gilman was present for the hearing along with his retained counsel, Brent M. Bloom. The United States was represented by Assistant U.S. Attorneys Justin Dawson and Robert C. Sigler. During the hearing, the court heard the testimony of DCSD Sergeant Edward J. VanBuren (Sergeant VanBuren). The court received into evidence a vehicle registration (Ex. 101) and a video/audio recording of the traffic stop (Ex. 102). A transcript of the hearing (TR.) was filed on August 4, 2008 (Filing No. 47). Prior to the hearing, the government filed a

---

[1]As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue underlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

brief (Filing No. 40) opposing the defendants' motions.  Gelb filed a brief (Filing No. 34) in support of his motion.  Gilman filed briefs (Filing No. 36 and Filing No. 38) in support of each of his motions.

## FINDINGS OF FACT

Sergeant VanBuren is a canine sergeant and trainer for the DCSD (TR. 6). Sergeant VanBuren has been with the DCSD for over 22 years and in law enforcement for 29 years (TR. 6).  Sergeant VanBuren has had extensive training in narcotics interdiction and other law enforcement areas (TR. 6).  Sergeant VanBuren is certified as a law enforcement instructor, including in the area of detection of controlled substances (TR. 7). As part of his experience and training, Sergeant VanBuren has been exposed to, and is able to distinguish, the odor of both raw and burnt marijuana (TR. 7).

On March 12, 2008, at 11:28 a.m., Sergeant VanBuren conducted a traffic stop near 60th Street on eastbound Interstate 80 (TR. 7-8).  Sergeant VanBuren had initially observed a blue Toyota van with Vermont license plates near the L Street exit (TR. 8).  The Toyota was in the right lane of two eastbound lanes (TR. 8).  Sergeant VanBuren was behind the Toyota in a silver Ford Expedition, with canine and sheriff's department markings (TR. 8, 12).  Sergeant VanBuren observed the Toyota suddenly swerve partially into the left lane, with the driver's side tires moving several feet into the left lane (TR. 8). Sergeant VanBuren pulled up next to the vehicle and saw two males in the Toyota (TR. 9). At that time, Sergeant VanBuren ran a registration check on the Toyota and learned it was registered to a female (TR. 9).  Sergeant VanBuren passed the Toyota, which had slowed down considerably (TR. 13).  The Toyota allowed another vehicle to pass it (TR. 13).  In order to keep in visual contact, Sergeant VanBuren pulled over to the right and waited for the Toyota (TR. 13).

Sergeant VanBuren did not immediately stop the Toyota after it swerved because Sergeant VanBuren thought the Toyota may be a decoy vehicle involved in criminal activity (TR. 10).  A decoy vehicle is a vehicle traveling in tandem with, but ahead of, a vehicle carrying contraband (TR. 10).  A decoy vehicle makes an obvious traffic violation, attracting law enforcement attention for a traffic stop and clearing the way for a second vehicle, which

2

is carrying contraband, to travel through the area unobserved (TR. 11).   Based on his suspicion, Sergeant VanBuren alerted another deputy about the Toyota and the possibility of a second vehicle (TR. 11).   At that time, near 96th Street, Sergeant VanBuren observed the Toyota swerve a second time traveling about two feet into the left lane, then back into the original lane (TR. 12).   Sergeant VanBuren did not see the Toyota signal the intent to make a lane change prior to either swerve (TR. 14-15).   After the second incident, Sergeant VanBuren initiated the traffic stop (TR. 14).   Sergeant VanBuren stopped the vehicle based on two traffic violations and to determine if the driver was impaired or involved in any criminal activity (TR. 15).

Sergeant VanBuren approached the Toyota on the passenger side and identified the passenger as Gelb and the driver as Gilman (TR. 15).   Based on their driver's licenses, Sergeant VanBuren found Gelb was from Maryland and Gilman was from New York (TR. 16).   Sergeant VanBuren realized the female's name from the registration check did not match either occupant (TR. 17).   Sergeant VanBuren asked the driver to step back away from the Toyota so Sergeant VanBuren could speak to Gelb, who stated he owned the vehicle (TR. 18).   Gelb stated the person on the registration, with the last name of Wasserman-Lindsey, was his wife (TR. 18; Ex. 101).   Sergeant VanBuren observed Gelb's eyes were bloodshot and watery (TR. 19).   Sergeant VanBuren also smelled a strong odor of burnt marijuana when Gelb was talking, as if Gelb had been smoking marijuana (TR. 19).   Gelb stated the pair had been in Colorado visiting friends (TR. 19).

Sergeant VanBuren then spoke to Gilman, who Sergeant VanBuren had asked to step back to the police vehicle (TR. 20).   The reason for having Gilman exit the Toyota was to separate the vehicle's occupants, to enable Sergeant VanBuren to observe the driver for any impairments and to be located in a relatively safe and quiet environment (TR. 20).   In the police vehicle, Sergeant VanBuren began a records check on Gilman and asked Gilman about his travel itinerary (TR. 20-21).   Gilman stated they had been driving around out west, including California, but he did not want to answer any other questions about it (TR. 21).   Gilman appeared nervous, but otherwise unimpaired (TR. 21).   Gilman was looking straight ahead or glancing around, without looking directly at Sergeant VanBuren, during the questions (TR. 23).   When Sergeant VanBuren explained the reason for the

stop, Gilman apologized and stated he was a little tired, but had not been drinking anything or otherwise distracted (TR. 21).  While talking to Gilman, Sergeant VanBuren received information that Gelb had a prior drug arrest (TR. 22).

At approximately 11:43 a.m., Sergeant VanBuren returned Gilman's documents and advised Gilman he was giving him a verbal warning only (TR. 22).  Sergeant VanBuren then asked Gilman for permission to ask him additional questions, to which Gilman agreed (TR. 22).  Sergeant VanBuren asked Gilman if the vehicle was carrying any contraband, including stolen items, weapons, cocaine or marijuana (TR. 23, Ex. 102).  Gilman took great effort to look directly at Sergeant VanBuren when giving his answer of "no" to each item (TR. 23).

Based on his observations and the information he had gathered, Sergeant VanBuren "definitely knew" there was some criminal activity occurring (TR. 23-24).  Specifically, Sergeant VanBuren knew one of the occupants had been smoking marijuana and he suspected the Toyota did not belong to either of them (TR. 24).[2]  Additionally, because of the vague and inconsistent travel itineraries, Sergeant VanBuren suspected additional criminal activity (TR. 24).  For these reasons, Sergeant VanBuren asked for consent to search the vehicle, which consent was denied (TR. 24).  By this time, another officer had arrived with a canine so Sergeant VanBuren asked Gelb to step out of the vehicle to allow the canine to sniff the vehicle (TR. 24).  At approximately 11:45 a.m., when Gelb stepped out of the Toyota, Sergeant VanBuren smelled a very strong odor of raw marijuana coming from the interior of the Toyota (TR. 24).

Ultimately officers searched the Toyota and found a duffel bag containing large blocks of marijuana (TR. 25).  In the front passenger seat officers found a small tin containing marijuana and rolling papers (TR. 26).  In the front seat area officers found additional paraphernalia and what looked like small marijuana roaches (TR. 26).  Sergeant VanBuren did not observe any of these items prior to the formal search of the Toyota (TR.

---

[2]  Gelb is listed as a joint owner of the Toyota on the registration document (Ex. 101), however Sergeant VanBuren testified he does not remember seeing that document prior to the search of the vehicle and was relying on the information he received from dispatch (TR. 29-30, 41-42, 48-49).

26).  The officers began the formal search of the vehicle at approximately 11:50 a.m. (Ex. 102).

## LEGAL ANALYSIS

**A.     Traffic Stop**

A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle.  *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).  An officer's subjective motivations do not affect the reasonableness of a traffic stop based on the violation of the traffic laws. *Long*, 532 F.3d at 795; *United States v. Chatman*, 119 F.3d 1335, 1340 (8th Cir. 1997) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.") (internal quotation omitted).  Here, Sergeant VanBuren personally observed the Toyota swerving outside its lane of travel on two separate occasions.  Sergeant VanBuren reasonably believed the driver was committing a traffic infraction by crossing the divider lane in violation of the Nebraska rules of the road requiring a vehicle to maintain a single lane.  **See** Neb. Rev. Stat. §§ 60-6,139(1) and 60-6,161 (signal required when moving between lanes).  Additionally, under the circumstances Sergeant VanBuren reasonably believed the driver may be impaired.  **See** *United States v. Mallari*, 334 F.3d 765, 767 (8th Cir. 2003); **see also** *Nebraska v. Thomte*, 413 N.W.2d 916, 919 (Neb. 1987) (holding a vehicle weaving twice in its own lane of traffic over the course of one mile provides reasonable suspicion for an investigation regarding the driver's condition in operating the weaving vehicle).

Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting** *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)).  In fact, a police officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Additionally, the police officer may inquire about

5

the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. *Peralez*, 526 F.3d at 1119; *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008); *United States v. Williams*, 431 F.3d 296, 298 (8th Cir. 2005); *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999).

"If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)). Specifically, an officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers. *$404,905.00*, 182 F.3d at 647. In any event, the scope and length of any investigation must be reasonable. *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). "The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting** *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (en banc)).

The scent of marijuana alone provided the officers with probable cause to search the defendants and the vehicle. **See** *United States v. Clayborn*, 339 F.3d 700, 702 (8th Cir. 2003) (holding that the smell of marijuana gave the police probable cause to search); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (same). Finally, an arrest is constitutionally reasonable "when an officer has probable cause to believe a person committed even a minor crime in his presence." **See** *Virginia v. Moore*, 128 S. Ct. 1598, 1604 (2008). The scent of the marijuana in the vehicle justified the defendants' continued detention at the scene of the traffic stop. Although, the defendants argue their detention was unconstitutionally lengthy, the totality of the circumstances support the length of the brief detention for approximately twenty minutes from the time of the initial traffic stop until the discovery of packaged marijuana. Additionally, the observations made by Sergeant VanBuren, aside from smelling burnt marijuana, justified the brief detention while the officers continued their investigation. Accordingly, the defendants' stop, search and detention are supported by sufficient legal justification, as is the search of the blue Toyota.

6

B.      Statements

Gilman contends the statements he made during the traffic stop should be suppressed because such statements were not voluntarily made.  Gilman argues he was subject to custodial interrogation because Sergeant VanBuren had no intention of allowing Gilman to leave from the point when Sergeant VanBuren smelled burnt marijuana. "Police need not provide **Miranda** warnings before roadside questioning pursuant to a routine traffic stop because such questioning does not constitute 'custodial interrogation.'" *United States v. Howard*, 532 F.3d 755, 761 (8th Cir. 2008) (**citing** *Berkemer v. McCarty*, 468 U.S. 420, 437-39 (1984)).  Here, the court finds Gilman's questioning during the traffic stop does not constitute custodial interrogation.  Sergeant VanBuren asked Gilman routine questions related to the traffic stop and travel.  Gilman declined to answer some questions and agreed to answer others.  There is no evidence Gilman's responses were involuntary or coerced.  Therefore, Gilman's motion to suppress his statements should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

1.      Bryan A. Gelb's motion to suppress (Filing No. 33) be denied.

2.      Paul W. Gilman's motion to suppress statements (Filing No. 35) be denied.

3.      Paul W. Gilman's motion to suppress stop and subsequent search (Filing No. 37) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 4th day of September, 2008.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge