IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR110 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| BRYAN A. GELB and ) | |
| PAUL W. GILMAN, ) | |
| ) | |
| Defendants. ) | |

### Procedural Background

This matter is before the court on the objections filed by defendants Bryan A. Gelb ("Gelb") (Filing No. 51) and Paul W. Gilman ("Gilman") (Filing No. 49) to the magistrate judge's report and recommendation (Filing No. 48). The magistrate judge recommends that this court deny the defendants' motions to suppress (Filings No. 33, 35, & 37). The Indictment in this matter charges defendants with possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (Count II) and conspiracy related thereto, in violation of 21 U.S.C. § 846 (Count I) (Filing No. 1).

The defendants seek to suppress evidence derived from a traffic stop conducted by the Douglas County Sheriff's Department ("DCSD") of a vehicle driven by Gilman and occupied by Gelb on March 12, 2008, in Omaha, Nebraska. Additionally, Gilman seeks to suppress the statements he made during the stop. The defendants contend that Sergeant Van Buren did not have a reasonable, articulable suspicion of wrongdoing to justify a brief investigative detention in accordance with *Terry v. Ohio*. *See* 392 U.S. 1 (1968). Furthermore, Gilman avers that the circumstances surrounding his interrogation during the *Terry* stop effectuated custody for the purposes of *Miranda v. Arizona*, and

consequently, since Sergeant Van Buren never informed him of his rights under *Miranda*, all of his statements made during the stop ought to be suppressed. *See* 384 U.S. 436 (1966).

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court has conducted a de novo review of the record, including the transcript of the hearing as well as the video recording of the traffic stop (Exh. 102), and the court adopts the report and recommendation in part. The court adopts the magistrate judge's finding that Sergeant Van Buren's *Terry* stop and subsequent search of the vehicle did not violate defendants' Fourth Amendment rights. In regards to statements made by defendant Gilman during the *Terry* stop, however, this court finds that certain circumstances surrounding his questioning constituted a custodial interrogation, and consequently, Sergeant Van Buren should have read Gilman his *Miranda* rights before interrogating him. More specifically, this court concludes that Gilman was no longer free to go and custody was thus effected at 10:43 a.m. when the traffic stop and consensual conversation ended and Sergeant Van Buren asked the defendant for permission to search; Gilman's statements made after 10:43 a.m. on March 12, 2008, therefore, will be suppressed.

### The *Terry* Stop and Search of the Vehicle

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." *United States v. Hughes,* 517 F.3d 1013, 1016 (8th Cir. 2008). Such a stop is governed by the case of *Terry v. Ohio*, and thus is

known as a "*Terry* stop." *See* 392 U.S. 1 (1968); *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001).

Reasonable suspicion must be supported by "specific and articulable facts." *Terry,* 392 U.S. at 21. In determining whether an officer had a "'particularized and objective basis' for suspecting legal wrongdoing," this court must look at the totality of the circumstances, allowing officers to draw on their experience and training. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). A police officer's "observation of [a defendant's] traffic violation [gives] him probable cause to stop the vehicle[, and . . . w]hether a traffic stop is appropriate is not affected by an officer's subjective motivations. Crossing the yellow center line constitutes a violation that allows an officer to stop the motorist and issue a citation." *United States v. Long,* 532 F.3d 791, 795 (8th Cir. 2008) (citations omitted).

Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (quoting *United States v. McCoy,* 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). The scent of marijuana alone provides an officer with probable cause to search the defendants and their vehicle. *See United States v. Clayborn*, 339 F.3d 700, 702 (8th Cir. 2003) (holding that the smell of marijuana gave the police probable cause to search); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (same).

The evidence adduced at the hearing supports the magistrate judge's report that Sergeant Van Buren's stop and subsequent search of defendants' vehicle was well within the bounds of the Fourth Amendment. On March 12, 2008, at 11:28 a.m., Sergeant Van Buren conducted a traffic stop near 60th Street on eastbound Interstate 80 after witnessing defendant Gelb's Toyota suddenly swerve partially into the left lane, with the driver's side

3

tires moving several feet into the left lane (TR. 7-8). When their vehicles approached 96th Street, Sergeant Van Buren observed the Toyota swerve a second time traveling about two feet into the left lane, then back into the original lane (TR. 12). Sergeant Van Buren, therefore, was justified in conducting a *Terry* stop. *See Long*, 532 F.3d at 795. Upon approaching the vehicle to check the occupants' license and registration, Sergeant Van Buren observed that Gelb's eyes were bloodshot and watery and smelled a strong odor of burnt marijuana when Gelb was talking, as if Gelb had been smoking marijuana (TR. 19). The smell of burnt marijuana gave Sergeant Van Buren probable cause to search the vehicle. *See Clayborn*, 339 F.3d at 702. Thus the court denies defendants' motions to suppress the evidence found pursuant to the stop and subsequent search of the vehicle (Filing Nos. 33 and 37).

### Defendant Gilman's Statements

The court grants in part defendant Gilman's motion to suppress his statements (Filing No. 35). Because Sergeant Van Buren failed to read Gilman his *Miranda* rights before interrogating him in circumstances that amount to a custodial interrogation, this court will suppress all of Gilman's statements made after 10:43 a.m. during the course of the traffic stop. When a defendant is interrogated in circumstances that constitute "custody, *Miranda* warnings [are] required." *United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008). "*Miranda* defines custodial interrogation as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.* at 921-22 (quoting *Miranda*, 384 U.S. at 444).

4

Thus, the "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" that amounts to the equivalent of custody. *California v. Beheler*, 463 U.S. 1121, 1125, (1983) (internal quotations omitted); *United States v. Martinez*, 462 F.3d 903, 909 (8th Cir. 2006) (holding that the ultimate question is whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.") (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). While most traffic stops do not constitute "custody" for *Miranda* purposes, "[s]ome traffic *Terry* stops might involve such restraint, necessitating *Miranda* warnings. 'If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him in custody for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*.'" *Martinez*, 462 F.3d at 909 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). "Factors useful in considering whether custody is involved are whether the suspect was advised that he was free to go, whether he was restrained, whether he initiated contact with authorities, whether strong arm tactics or deceptive stratagems were used, whether the atmosphere was police dominated, and whether the suspect was placed under arrest at the termination of questioning." *United States v. Johnson*, 64 F.3d 1120, 1126 (8th Cir. 1995).

If the circumstances show that the defendant was effectively in custody, then the question becomes whether police interrogated defendant. "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Hogan*, 539 F.3d at 922.

This court finds that Gilman was both effectively in custody and interrogated by Sergeant Van Buren. The circumstances surrounding Sergeant Van Buren's questioning

5

of Gilman after 10:43 a.m. on March 12, 2008, typify an example of when "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112; *see also Hogan*, 539 F.3d 916 (holding that defendant was effectively in custody when a reasonable person would not have felt at liberty to leave); *Martinez*, 462 F.3d 903 (same). Gilman was questioned in an atmosphere that was "police dominated," he was never informed that he was free to go, and upon the termination of his interrogation, he was arrested. *Johnson*, 64 F.3d at 1126 (holding that these three factors are factors courts should consider in determining whether defendant was effectively in custody).

Before Sergeant Van Buren conducted background checks on the two defendants, Sergeant Van Buren removed Gilman from his vehicle and separated him from his fellow occupant (Exh. 102 at 10:29 a.m.). Gilman did not initiate contact with Sergeant Van Buren, and he was never informed that he was free to leave (TR. 36). Instead, Gilman was placed inside the Sergeant's K-9 patrol car, while Rocky, the canine on the scene, barked audibly in the backseat (TR. 51 & Exh. 102 at 10:29 a.m.). While Sergeant Van Buren began his interrogation of Gilman by asking him routine traffic stop questions, this routine traffic stop transformed from a consensual encounter into effective custody after Sergeant Van Buren returned Gilman's ID to him and informed him that he was only writing him a warning (*See* Exh. 102 at 10:43 a.m.). Sergeant Van Buren then asked Gilman for permission to search his vehicle, and Gilman refused to consent (Exh. 102 at 10:43 a.m.).

As soon as Gilman refused to consent to the search of his car, another officer arrived on the scene and subsequently conducted a canine sniff around defendant Gilman's vehicle (Exh. 102 at 10:44 a.m.–10:49 a.m.). No reasonable person would

believe he was free to go while watching a police officer conduct a search around his own vehicle to which he has just refused to give consent. Consequently, this court concludes that Gilman was effectively in custody at 10:43 a.m., when he refused to consent to the search of his vehicle and Sergeant Van Buren proceeded with the search.

Furthermore, the line of questioning that followed Sergeant Van Buren's search of Gilman's vehicle constituted an interrogation for *Miranda* purposes, as Sergeant Van Buren's questions were "reasonably likely to elicit an incriminating response from" Gilman. *Hogan*, 539 F.3d at 922 ("Here, the troopers expressly questioned [defendant] about his knowledge of the presence of drugs, and his willingness to assist in a controlled delivery. These questions were reasonably likely to elicit an incriminating response. . . ."). After Sergeant Van Buren took the dog around the exterior of the vehicle, he returned to his patrol car and pursued a new line of questioning: "Have you guys been smoking any pot? The dog's indicated the odor of drugs in there. Do you have any items for personal use in there?" (Exh. 102 at 10:49 a.m.).

There can be no doubt that these statements and questions made by Sergeant Van Buren were likely to elicit an incriminating response. Gilman was effectively in custody at the time that Sergeant Van Buren interrogated him after 10:43 a.m., and consequently, Sergeant Van Buren should have read him his *Miranda* rights before continuing with his line of questioning. Because Sergeant Van Buren failed to read Gilman his *Miranda* rights, all statements made by Gilman after 10:43 a.m. will be suppressed.

## Conclusion

For the reasons stated above, the magistrate judge's report and recommendation will be adopted in part. Accordingly,

IT IS ORDERED:

1.  Defendant Gelb's objection (Filing No. 51) to the report and recommendation is overruled.

2.  Defendant Gilman's objection (Filing No. 49) is adopted in part.

3.  The magistrate judge's report and recommendation (Filing No. 48) is adopted in part.

4.  Defendant Gelb's motion to suppress (Filing No. 33) is denied.

5.  Defendant Gilman's motion to suppress (Filing No. 37) is denied.

6.  Defendant Gilman's motion to suppress (Filing No. 35) is granted in part. This court will suppress all of defendant's statements made after the issuance of the traffic warning at about 10:43 a.m. during the March 12, 2008, traffic stop (*see* Exh. 102).

DATED this 7th day of November, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge